UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:18-cv-24134-CMA

**SHEHAN WIJESINHA**
individually and on behalf of all
others similarly situated,                                              **CLASS ACTION**

                    Plaintiff,                                          **JURY TRIAL DEMANDED**

v.

**FAITH AND FREEDOM COALITION, INC.**

                    Defendant.
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Shehan Wijesinha brings this class action against Defendant Faith and Freedom

Coalition, Inc. ("FFC") and alleges as follows upon personal knowledge as to himself and his own

acts and experiences, and, as to all other matters, upon information and belief, including

investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C.

§ 227 *et seq*., ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

2.      As recently noted by the Federal Communications Commission, the "TCPA and the

FCC's rules do apply to political campaign-related calls or texts."[2]

3.      Indeed, "[p]olitical campaign-related <u>autodialed</u> or <u>prerecorded voice</u> calls (including

---

[1] Pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff hereby amends his complaint as a matter of course.

[2] https://www.fcc.gov/political-campaign-robocalls-robotexts; (last accessed Nov. 19, 2018).

autodialed live calls, prerecorded voice messages, and text messages) are…Not allowed to cell phones, pagers, or other mobile devices without the called party's prior express consent."[3]

4.      Leading up to the recent midterm elections, political groups throughout the country sought to influence the public vote through targeted robotext campaigns to voters' cellular telephones.

5.      "Robotexts are text messages generated through autodialing. Under the TCPA, these are considered a type of call and fall under all the robocall rules."[4]

6.      "As text messages generally go to mobile phones, they require the called party's prior express consent if they are generated using autodialing."[5]

7.      This case arises from the use of campaign-related robotexts to the cellular telephones of non-consenting individuals.

8.      FFC is a political non-profit organization whose goals are to "influence public policy and enact legislation that strengthens families, promotes time-honored values, protects the dignity of life and marriage, lowers the tax burden on small business and families, and requires government to tighten its belt and live within its means."[6]  It is headquartered in Duluth, GA.

9.      Plaintiff and Class Members have no relationship with Defendant, and never provided their telephone numbers to Defendant.

10.      Nevertheless, Defendant embarked on an unsolicited text message campaign, causing Plaintiff and class members injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

---

[3] *Id.*

[4]  *Id.*

[5] *Id.*

[6] https://www.ffcoalition.com/about/ (last visited 10/4/2018).

11.     Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

12.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each text message that is in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

13.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provide and market their services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant sent the same text message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

## PARTIES

14.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami, Florida.

15.     FFC is a 501(c)(4) non-profit organization with its principal office located at 3700 Crestwood Pkwy NW, STE 975, Duluth, GA. FFC targets Florida residents with its political text

messages.

## THE TCPA

16.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

17.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

18.     The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

20.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

21.     A defendant must demonstrate that it obtained the plaintiff's prior express consent before using an automatic dialing system to contact an individual.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015)

(requiring express consent "for non-telemarketing and non-advertising calls").

22.     Lastly, with respect to standing, as recently held by the United States Court of Appeals

for the Ninth Circuit:

> Unsolicited [] phone calls or text messages, by their nature, invade the
> privacy and disturb the solitude of their recipients. A plaintiff alleging a
> violation under the TCPA "need not allege any *additional* harm beyond
> the one Congress has identified."

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v.*

*Robins*, 136 S. Ct. 1540 (2016)).

23.     Similarly, the United States Court of Appeals for the Second Circuit recently held that

the receipt of an unsolicited call "demonstrates more than a bare violation and satisfies the concrete-

injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-

cv, 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017) (citing *In re Methyl Tertiary Butyl Ether*

*(MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing

need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-

21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was

sufficient to establish standing under TCPA); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.,*

*P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that injury under similar TCPA provision may be

shown by one-minute occupation of fax machine)).

## FACTS

24.     Defendant embarked upon an intrusive automated text messaging campaign to promote

its political agenda.

25.     To execute its campaign, Defendant hired Opn Sesame, a third-party marketing

company, to cause text messages to be transmitted to the cellular telephone numbers of Plaintiff and the

class members.

26.     Specifically, on September 25, 2018, Defendant placed, or caused to be placed, the following automated text message to Plaintiff's cellular telephone number ending in 7557 ("7557 Number"):



27.     On September 27, 2018, September 29, 2018, and October 27, 2018 (after having filed his complaint) Plaintiff received additional texts from FFC.

28.     On October 31, 2018, Plaintiff replied "STOP" to Defendant.  He immediately received the following automated message confirming that he had been unsubscribed:



29.    Defendant sent these text messages to Plaintiff from (470) 280-0932, a number which,

upon information and belief, Defendant owned and/or operated.

30.    The very same day Plaintiff requested Defendant to stop messaging him, and after

receiving confirmation that he was unsubscribed, Defendant texted Plaintiff the following message from

a different phone number:



31.    Plaintiff again responded to Defendant with "STOP" and immediately received a

message confirming that he was unsubscribed.

32.     Defendant sent these subsequent text messages to Plaintiff from (321) 517-0991, a number which, upon information and belief, Defendant owned and/or operated.

33.     Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant caused similar texts to be placed to individuals residing within this judicial district.

34.     At no point in time did Plaintiff provide Defendant with his express consent to be contacted by telephone using an ATDS.  Nor did Plaintiff provide his telephone number to Defendant or any vendor hired by Defendant.

35.     To the extent that Defendant had express consent to contact Plaintiff using an ATDS – it did not - that consent was expressly revoked when Plaintiff responded "STOP" on October 31, 2018.

36.     Plaintiff is the subscriber and sole user of the 7557 Number.

37.     To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

38.     The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendant.

39.     The Platform has the capacity to generate sequential numbers, which capacity was in fact utilized by Defendant.

40.     The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendant.

41.     The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by Defendant.

42.     The Platform has the capacity to dial numbers without human intervention, which

capacity was in fact utilized by Defendant.

43.     The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

44.     Additionally, the Platform has an auto-reply function that results in the transmission of text messages to individual's cellular telephones automatically from the system, and with no human intervention, in response to a keyword (e.g. "STOP") being sent by a consumer, which function was also utilized by Defendant as demonstrated by the text messages above.

45.     To transmit the text messages at issue, Defendant uploaded a list of telephone numbers which are stored indefinitely by the Platform.

46.     Defendant then created the content of the text messages, selected the telephone numbers to transmit the messages to, and selected a date and time for transmission.

47.     In making these selections, Defendant was simply creating a set of instructions that were subsequently executed automatically (i.e. with no human intervention), by the Platform.

48.     The Platform automatically executed Defendant's instructions as follows:

> (1) The Platform retrieved each telephone number from the list of numbers uploaded by Defendant in the sequential order the numbers were listed by Defendant;
>
> (2) The Platform then generated each number in the sequential order listed by Defendant and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

(3) Each packet was then transmitted in the sequential order listed by Defendant to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

(4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant.  Each mobile carrier then sent the message to its customer's mobile telephone.

49.     The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously.  Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

50.     Further, the Platform "throttles" the transmission of the text messages depending on feedback it receives from the mobile carrier networks.  In other words, the platform controls how quickly messages are transmitted depending on network congestion.  The platform performs this throttling function automatically and does not allow a human to control the function.

51.     The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



52.     Defendant's unsolicited texts caused Plaintiff actual harm, including invasion of his

privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's text

messages also inconvenienced Plaintiff and caused disruption to his daily life.  Plaintiff had to waste his

time and divert his attention in order to review the messages to determine who was texting him and

why.  Additionally, the text messages caused Plaintiff concern that his telephone number had somehow

been provided to Defendant without his authorization.

## CLASS ALLEGATIONS

### PROPOSED CLASS

53.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of

himself and all others similarly situated.

54.     Plaintiff brings this case on behalf of the below defined Class:

> **No Consent Class: All persons within the United States (1) who,
> within the four years prior to the filing of this Complaint; (2)
> were sent a text message; (3) from Defendant or anyone on
> Defendant's behalf; (4) to said person's cellular telephone
> number; (5) using the same equipment, or type of equipment,
> used to text Plaintiff's cellular telephone; (6) without the
> recipient's prior express consent.**

> **Revocation Class: All persons within the United States (1) who,
> within the four years prior to the filing of this Complaint; (2)
> were sent a text message; (3) from Defendant or anyone on
> Defendant's behalf; (4) to said person's cellular telephone
> number; (5) using the same equipment, or type of equipment,
> used to text Plaintiff's cellular telephone; (6) after making a
> request to Defendant to not receive future text messages.**

55.     Defendant and their employees or agents are excluded from the Class.  Plaintiff does

not know the number of members in the Class but believes the Class members number in the several

thousands, if not more.

### NUMEROSITY

56.      Upon information and belief, Defendant has placed automated text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

57.      The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

<u>COMMON QUESTIONS OF LAW AND FACT</u>

58.      There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

(2) Whether Defendant can meet their burden of showing that they obtained prior express written consent to make such text messages;

(3) Whether Defendant's conduct was knowing and willful;

(4) Whether Defendant are liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

59.      The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant places automated and/or prerecorded telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

60.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

61.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

63.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

64.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

65.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

66.     Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to send non-emergency telephone text messages to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

67.

68.

69.     These text messages were sent without regard to whether Defendant had first obtained express permission from the text messaged party to make such text messages. In fact, Defendant did not have prior express consent to text message the cell phones of Plaintiff and the other members of the putative Class when its text messages were made.

70.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and Class Members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls or text messages.

**WHEREFORE**, Plaintiff Shehan Wijesinha, on behalf of himself and the other members of the Class, prays for the following relief:

a.      A declaration that Defendant practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.      A declaration that Defendant violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c.      An injunction prohibiting Defendant from using an automatic telephone dialing system to call or text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.      An award of actual, statutory damages, and/or trebled statutory damages; and

e.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the communication or transmittal of telephone text messages as alleged herein.

Date: November 19, 2018

Respectfully submitted,

**IJH Law**

*/s/ Ignacio J. Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 0056031
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469
*Counsel for Plaintiff*

**HIRALDO P.A.**

Manuel S. Hiraldo
Florida Bar No. 030380

15

401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*

**EISENBAND LAW, P.A.**

515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Ignacio J. Hiraldo*
Ignacio J. Hiraldo, Esq.
Florida Bar No. 0056031
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469
*Counsel for Plaintiff and the Class*